## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ABIMBOLA O. ASOJO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   NO. CIV-11-333-D |
| | ) |
| STATE OF OKLAHOMA *ex rel.* THE | ) |
| BOARD OF REGENTS OF THE | ) |
| UNIVERSITY OF OKLAHOMA, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is the Motion to Dismiss Amended Complaint [Doc. No. 19] filed by

Defendant State of Oklahoma *ex rel.* the Board of Regents of the University of Oklahoma

("University"). The University seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and (6), arguing

the Court lacks subject matter jurisdiction over one of Plaintiff's claims and that, with respect to the

remaining claims, the allegations are insufficient to state a plausible claim for relief against the

University, and some claims are barred by the statute of limitations.

I. Background:

Plaintiff Abimbola O. Asojo is an African American female, born in Nigeria, who is

employed by the University as a professor in its Department of Architecture. She alleges the

University discriminated against her on the basis of her gender, race, and national origin in violation

of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). She also alleges the

University subjected her to unlawful harassment in violation of Title VII, and unlawfully retaliated

against her after she exercised rights protected by Title VII. Plaintiff further alleges the University

violated the Equal Pay Act, 29 U. S. C. § 203(d), by paying her less than similarly situated male

professors.   In addition to the foregoing federal claims, she asserts a pendent state tort claim asserting negligence.

The Amended Complaint presents these contentions in the form of five causes of action: 1) a Title VII claim alleging employment discrimination on the basis of race, gender, and national origin; 2) a Title VII claim alleging retaliation for the exercise of Title VII protected rights; 3) an Equal Pay Act claim alleging gender-based disparity in salary; 4) a pendent state tort claim alleging negligent training, supervision, and retention of employees; and 5) a Title VII claim alleging both retaliation and harassment based on race, gender, and national origin.

The University seeks dismissal of the pendent state tort claim, set forth as the fourth cause of action, pursuant to Fed. R. Civ. P. 12(b)(1).  It argues the Court lacks subject matter jurisdiction over this claim because the University is entitled to immunity from liability on that cause of action. The University seeks dismissal of the other causes of action pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the statute of limitations has expired on a portion of the Equal Pay Act claims and, with respect to the remaining Title VII and Equal Pay Act allegations, Plaintiff has failed to plead sufficient facts to state a plausible claim for relief.

In its reply, the University correctly notes that Plaintiff's response to the motion presents no argument or authority, but merely adopts her response to the University's motion to dismiss the original Complaint.  The University argues this is improper because its original motion was rendered moot when the Amended Complaint was filed.  It also notes the response was filed after the 21-day deadline prescribed by the Local Civil Rules, and Plaintiff did not request an extension of that deadline.  The University asks the Court to deem the motion to dismiss confessed on these bases.

Although the University is correct that its earlier motion was rendered moot by the filing of

the Amended Complaint, a comparison of the original and amended complaint establishes that the amendment did not add new substantive allegations.  Instead, the sole purpose was to add a claim based on the Equal Employment Opportunity Commission's issuance of a "Right to Sue Notice" in response to a charge of discrimination filed by Plaintiff after the Complaint was filed.[1]   Although the Court agrees that Plaintiff should have prepared a new response, it has located no authority supporting the conclusion  that her failure to do so mandates deeming the motion confessed.  With respect to the timing of her response, the record reflects it was filed 22 days after the University's motion, or one day after the deadline in the Local Civil Rules.  The Local Civil Rules provide, if a response is not filed within 21 days, the motion "may, in the discretion of the Court" be deemed confessed.  LCvR 7.1(g).  The Court is not, however, required to deem the motion confessed. While the Court does not condone Plaintiff's failure to comply with the Local Civil Rules, it does not find the one-day delay sufficient to warrant deeming the motion confessed.

II.  Allegations in the Amended Complaint:

Plaintiff is an African-American female who was born in Nigeria.  In 1997, after having earned a masters degree in architecture, Plaintiff was employed by the University in a tenure track faculty position in the College of Architecture, where she was the only African-born female faculty member.  Amended Complaint, ¶¶ 5-8.  Plaintiff was granted tenure and promoted to Associate Professor in 2003 and, in January of 2005, she was appointed Director of Interior Design.  At the time of her appointment, she was the only minority female holding the position of director in the College of Architecture, and the only African-American faculty member in a tenured position in that

---

[1]Plaintiff's motion [Doc. No. 16] to file the Amended Complaint also expressly stated that the sole purpose of the amendment was to include allegations based on the new charge of discrimination, and the Court granted the motion to amend on that basis.

college.  *Id.*  at ¶¶ 9-11.  According to Plaintiff, she served as Director of Interior Design for five years, and was then removed from that position by Dean Charles Graham.  *Id.* at ¶ 12.

The Amended Complaint reflects that the majority of Plaintiff's claims are based on the allegation that other faculty members retaliated against Plaintiff after she voted to deny tenure for Hans-Peter Wachter, a white male faculty member.  Amended Complaint at ¶¶ 12-18.  According to Plaintiff, she and other faculty members initially voted to deny Wachter tenure, but  the former Dean of the College of Architecture allegedly intervened and extended Wachter's time period for obtaining tenure.  Plaintiff alleges that she "was removed" from the second tenure vote as well as from Wachter's annual evaluation process.  Plaintiff also alleges that Wachter's "lifestyle partner," Scott Williams, was hostile to Plaintiff and verbally and physically assaulted her.  Plaintiff alleges Williams is white.   According to Plaintiff, she filed a complaint with the University Equal Employment Opportunity office regarding the assault, but was told nothing could be done because Williams was her subordinate.  Amended Complaint at ¶¶ 18-19.

In the ensuing paragraphs of the Amended Complaint, Plaintiff alleges that she was subjected to "hostility, harassment, and insubordination" by Wachter and Williams.  She alleges that Dean Graham "reinforced their behaviors" and also denied her equal pay "in comparison to faculty members with less experience, performance, and seniority which was further retaliation for Plaintiff's non-support of Wachter's tenure and promotion." Amended Complaint ¶ 20.  She alleges that Dean Graham also told her that Wachter, Williams, and Christina Hoehn, a female white faculty member, "did not respect Plaintiff and would not listen to her or respect her authority as Director of the Division of Interior Design."  *Id.* at ¶ 21.

According to Plaintiff, she was successful in her position as Director of Interior Design,

alleging she was able to "secure a ranking" for the Division as the only College of Architecture program to be ranked, and she received "national recognition for her outstanding performance." Amended Complaint ¶ 22.    Dean Graham removed her as Director on June 24, 2010. *Id.* at ¶22. She alleges that, approximately two months later on August 15, 2010, her salary was reduced by 30 per cent, a reduction which resulted from her removal as Director of Interior Design.

Plaintiff alleges that, later in August, she was selected by a tenured faculty vote to serve as the Division of Interior Design's representative to Committee A.[2]   She contends, however, that Christina Hoehn objected to the vote and that, in an "unprecedented action" a second vote was conducted, and Plaintiff was not selected.   Instead, Professor Wachter was chosen.   Amended Complaint at ¶¶24-28.

Plaintiff also alleges that, in September of 2010, Christina Hoehn, who had "less seniority, experience, and credentials" was selected over Plaintiff as Graduate Liaison for the Interior Design Division Masters Program. *Id.* at ¶ 29.   She further alleges that, in October of 2010, she applied for promotion to the position of full professor and, while her application was pending, Professors Wachter and Hoehn improperly examined her "promotion dossier," removed materials and "tampered with the dossier in an effort to prevent" Plaintiff's promotion.   She regarded the contents as confidential. Amended Complaint at ¶¶ 29-31.   She alleges that she asked Dean Graham to "recuse Wachter" from reviewing her "promotion dossier," but that her request was denied.   She was not promoted to the position of full professor. *Id.* at ¶¶

Plaintiff alleges that she filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 14, 2010, October 22, 2010, and November 16, 2010;

---

[2]Plaintiff does not allege facts to explain Committee A or its role or function in the University.

she received from the EEOC notices of her right to sue with respect to each, and copies of the charges and notices are attached to the Amended Complaint.[3]  She alleges the University was aware of her first EEOC charge of discrimination when the vote electing her to Committee A was rescinded and when she was denied a full professorship.

Plaintiff also alleges that, in April of 2011, after filing this lawsuit, she was given a poor performance evaluation which she contends was unwarranted and prepared in retaliation for the filing of this lawsuit.  Amended Complaint at ¶¶ 70-71.  After filing another EEOC charge on May 25, 2011, she observed a co-worker photographing her residence, and she complained to the University about this incident.  *Id.* at ¶ 72. According to Plaintiff, the University did not take any action.  *Id.*  On June 20, 2011, she filed another EEOC charge of discrimination complaining that this conduct constituted harassment by a co-worker.

In addition to the foregoing, Plaintiff alleges that, while she held the position of Director of Interior Design, she was paid a salary lower than that of similarly situated male professors, but her duties and responsibilities were the same as the male professors.  Amended Complaint at ¶¶ 57-60. She alleges that this salary discrepancy occurred from January 2005, when she was named Director of Interior Design, through her removal from that position on June 24, 2010.  *Id.* at ¶ 57.

III.  Application:

A. Motion to dismiss fourth cause of action pursuant to Rule 12(b)(1):

Plaintiff's  fourth cause of action purports to assert a claim pursuant to the Oklahoma Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51 § 151, *et seq.,*  labeling it as a tort

---

[3]Also attached to the Amended Complaint are two additional charges of discrimination, submitted to the EEOC after this lawsuit was filed on March 25, 2011. These are dated May 25, 2011 and June 20, 2011.  *See* Exhibits 4 and 5 to the Amended Complaint.

claim.  She alleges the University "negligently and carelessly trained, supervised, and retained Administrators to allow Plaintiff to be subjected to harassment by faculty and retaliated against in the promotion process to secure full professorship rank when Plaintiff's academic achievements and performance entitled her based on her merits to receive promotion to the rank of Full Professor." Amended Complaint at ¶ 66.  She further alleges that, with respect to this claim, she filed the Notice of Tort Claim required by the GTCA. *Id.* at ¶ 68.

The University seeks dismissal of this cause of action pursuant to Rule 12(b)(1), arguing the Court lacks subject matter jurisdiction because the University is entitled to sovereign immunity from liability.  An assertion of sovereign immunity is properly raised in a motion to dismiss pursuant to Rule 12(b)(1) because the Court lacks subject matter jurisdiction over claims barred by sovereign immunity.  *See, e.g., Muscogee (Creek) Nation v. Pruitt*, 669 F. 3d 1159, 1166 (10th Cir. 2012).

Pursuant to the Eleventh Amendment, a state and its entities are immune from  suit by a private individual.  "'[N]onconsenting States may not be sued by private individuals in federal court.'"  *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006) (quoting *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (1999)).  Eleventh Amendment immunity protects a state or an entity which is an "arm of the state." *Steadfast Ins. Co. v. Agricultural Ins. Co.,* 507 F.3d 1250, 1253 (10th Cir. 2007) (citing *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 280 (1977)).  "'[U]nder Oklahoma law, the Board of Regents of the University is an arm of the state.'"*Murray v. Colorado*, 149 F. App'x 772, 775 (10th Cir. 2005) (unpublished opinion) (quoting *Hensel v. Office of Chief Admin. Hearing Officer,* 38 F.3d 505, 508 (10th Cir. 1994)).

The GTCA contains a limited waiver of sovereign immunity by rendering the state potentially liable for torts committed by its employees while acting within the scope of their

employment.  Okla. Stat. tit. 51 § 153(A).  The GTCA does not, however, constitute a blanket waiver of Oklahoma's Eleventh Amendment immunity to suit in federal court.  Okla. Stat. tit. 51 § 152.1(A).  Instead,  "[t]he state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions. In so waiving immunity, it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution."  *Id.* § 152.1(B).  Instead, the GTCA provides the exclusive means by which an injured plaintiff may recover tort damages from a governmental entity, and limits the entity's liability to torts committed by employees while acting within the scope of their employment.  *Fuller v. Odom*, 741 P. 2d 449, 451 (Okla. 1987).

Plaintiff's allegations do not fall within the GTCA's limited waiver of immunity. She cites no statutory provision which would render the University, a state entity, liable for the tort of negligent supervision, training or retention.    In fact, Plaintiff has wholly failed to offer any response to the University's contention that it is entitled to sovereign immunity from liability on the fourth cause of action.  The University's argument was asserted in its motion to dismiss the original Complaint, to which Plaintiff responded.  In her response, Plaintiff did not object to dismissal of the fourth cause of action.  In fact, she did not even mention this cause of action or the University's contentions. Because Plaintiff's response to the current motion adopts her previous response, her failure to  object to dismissing the fourth cause of action is applicable to the current motion.

Furthermore, even if the University could be potentially liable for a tort cause of action under the facts alleged, the tort of negligent training and supervision requires allegations that the employer had "reason to know"  that one of its employees "is likely to harm others."  *Schovanec v. Archdiocese of Oklahoma City,* 188 P. 3d 158, 170 (Okla. 2008); *Escue v. Northern Oklahoma*

8

*College,* 450 F. 3d 1146,  1156 (10th Cir. 2006) (quoting *New Hampshire v. Presbyterian Church (U.S.A.)*, 998 P. 2d 592, 600 (Okla. 1999)).  "Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought." *New Hampshire,* 998 P.2d at 600. "The critical element for recovery is the employer's prior knowledge of the servant's propensities to create the specific danger resulting in damage." *Id.*

In this case, the Amended Complaint alleges no facts from which the Court could conclude that the University could be potentially liable under this theory of recovery.  Plaintiff alleges nothing to show the University's prior knowledge of any  employee's propensity to violate Title VII. The motion to dismiss the fourth cause of action is granted.

B. Motion to dismiss the remaining causes of action pursuant to Rule 12(b)(6):

Pursuant to Fed. R. Civ. P. 12(b)(6), the University seeks dismissal of Plaintiff's remaining claims on the grounds that the factual allegations fail to state a plausible claim for relief.  To avoid dismissal pursuant to Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008); *VanZandt v. Oklahoma Dept. of Human Services,* 276 F. App'x 843, 846 (10th Cir. 2008) (unpublished opinion).

To state a plausible claim, "the Plaintiff has the burden to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *VanZandt,* 276 F. App'x at 846 (quoting *Robbins,* 519 F. 3d at 1247). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matthews v. LaBarge, Inc.,*407 F. App'x. 277, 280 (10th Cir. 2011) (unpublished opinion) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The complaint

need not recite "detailed factual allegations, but the factual allegations must be enough to raise the right to relief above the speculative level." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir.2009) (internal quotation marks omitted).

Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Robbins*, 519 F. 3d at 1247. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F. 3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679. Although the Court must construe well-pleaded facts as true, it is not "bound to accept as true a legal conclusion couched as a factual allegation," nor is it required to accept as true allegations which "amount to nothing more than a 'formulaic recitation of the elements'" of a claim. *Id.* at 678; *Twombly*, 550 U.S. at 554-555. To satisfy *Twombly*, a complaint must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Furthermore, when considering a Rule 12(b)(6) motion, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

1.  First cause of action - Title VII employment discrimination based on race, gender, and national origin:

Plaintiff's first cause of action asserts that she was subjected to discrimination in violation

of Title VII[4] on the basis of race, sex and/or national origin based on four allegedly adverse employment actions: 1) she was removed as Director of Interior Design; 2) she was not selected to serve on Committee A; 3) she was not selected as Graduate Liaison; and 4) she was not promoted to the rank of full professor.   The University seeks dismissal on the grounds that she has failed to plead facts sufficient to state a plausible claim for relief on these bases.

"Although 'the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.'" *Townsend-Johnson v. Cleveland*, 2012 WL 2369335, at * 3 (10th Cir. June 25, 2012) (unpublished opinion) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)). The elements necessary to establish a *prima facie* case of Title VII discrimination based on race, sex, or national origin are essentially the same, as the statute prohibits employment discrimination on any of those bases.  42 U. S. C. § 2000e-2(a).   Thus, to state a plausible claim for relief for Title VII discrimination based on race, sex or national origin, Plaintiff must plead facts which, if proved,  establish that "(1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." *Khalik*, 671 F.3d at 1192 (citing *Sanchez v. Denver Public Schools,* 164 F.3d 527, 531 (10th Cir.1998)); *see also  Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir.2005)).

Where, as here, a plaintiff alleges a Title VII claim based in part on the employer's failure to promote her, she must allege facts to show 1) she was a member of a protected class; 2) she

---

[4]The Amended Complaint also contains a reference to 42 U.S.C. §1981.  *See* Amended Complaint at p. 8. However, there are no other references to this statutory provision.  In any event, the elements of a §1981 race discrimination claim based on employment are the same as those governing Title VII claims. *Carney v. City & County of Denver*, 534 F.3d 1269, 1273 (10th Cir.2008) (citing *Baca v. Sklar*, 398 F.3d 1210, 1218 n. 3 (10th Cir.2005)).

applied and was qualified for the position at issue; 3) despite being qualified, she was not selected; and 4) thereafter, the position was filled or remained available. *Jones v. Barnhart*, 349 F. 3d 1260, 1266 (10th Cir. 2003); *Amro v. Boeing Co.*, 232 F. 3d 790, 796 (10th Cir. 2000).

Reviewing the Amended Complaint in its entirety, the Court finds that Plaintiff has alleged sufficient facts to state a plausible claim for relief on this cause of action based on her race, but she has failed to do so with regard to a claim based on gender or national origin.   In fact, some factual contentions are inconsistent with a claim of gender discrimination.  For example, she alleges that, after she was removed as Director of Interior Design, she was replaced by a white female; she also alleges that the persons selected for membership on Committee A and for the position of Graduate Liaison were white females.  Furthermore, the Amended Complaint contains no factual allegation inferring or suggesting that Plaintiff's national origin was the basis for any adverse action which she contends was discriminatory.  Accordingly, while the allegations are sufficient to state a plausible claim based on race discrimination, they fail to state a claim based on gender or national origin discrimination. The motion to dismiss the first cause of action is thus granted as to her gender and national origin claims and denied as to her racial discrimination claim.

2. Second and fifth causes of action - retaliation for the exercise of Title VII rights:

In her second cause of action, Plaintiff alleges that the University retaliated against her after she exercised rights protected by Title VII.   According to Plaintiff, on a date not identified in the Amended Complaint, she submitted a complaint to the University's EEO officer.   Amended Complaint at ¶19.   On July 14, 2010, she filed her first charge of discrimination with the EEOC. She contends that, after she took these actions, the University retaliated against her.

In her fifth cause of action, Plaintiff alleges that she was also subjected to retaliation based

on allegedly adverse actions occurring after she filed this lawsuit on March 25, 2011 and after she filed additional EEOC charges on May 25, 2011 and on June 20, 2011.  The fifth cause of action also refers to alleged harassment by co-workers after this lawsuit was filed.

The University seeks dismissal of both causes of action.  It contends that Plaintiff has failed to allege facts sufficient to support a plausible claim for relief based on retaliation for the exercise of rights protected by Title VII.  Instead, it argues she has asserted only conclusory allegations reciting the elements of these causes of action.

Title VII prohibits an employer from retaliating against an employee for making a claim of discrimination or otherwise opposing discrimination. *See* 42 U.S.C. § 2000e–3(a). To prevail on a Title VII retaliation claim, a plaintiff must show "that retaliation played a part in the employment decision...." *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 (10th Cir.2008). To satisfy her *prima facie* burden on a retaliation claim, Plaintiff must show that 1) she engaged in protected opposition to discrimination; 2) her employer subsequently took action that a reasonable employee would have found materially adverse–that is, that the action might dissuade a reasonable worker from making or supporting a charge of discrimination; and 3) there is a causal connection between her protected activity and the adverse action.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006); *E.E.O.C. v. PVNF, L.L.C.,* 487 F.3d 790, 803 (10th Cir. 2007).   To state a plausible claim for relief on her retaliation claim, Plaintiff must allege facts which, if true, would establish these elements.

Title VII protected opposition includes the filing of an EEOC charge of discrimination, but protected activity may also consist of "complaining informally to supervisors" about conduct which the complainant believes to be discriminatory. *Medina v. Income Support Division,* 413 F. 3d 1131,

1135-36 (10th Cir. 2005); *Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). However, "[o]pposition to an employer's conduct is protected [by Title VII's retaliation provision] only if it is opposition to a practice made an unlawful employment practice by Title VII." *Petersen v. Utah Dep't of Corrections*, 301 F.3d 1182, 1188 (10th Cir.2002) (internal quotations omitted). "'Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII].'" *Faragalla v. Douglas County School Dist. RE 1,* 411 F. App'x 140, 148 (10th Cir. 2011) (unpublished opinion) (quoting *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187,1203 (10th Cir.2008)).   While the sufficiency of the employee's opposition is necessarily determined  by the specific facts of the case, the Tenth Circuit has rejected the sufficiency of a complaint which contains no reference to the employee's race or other protected category. *Faragalla*, 411 F. App'x at 148-49.   Thus, communications stating that other employees had "demeaned" and "harassed," "intimidated," "scrutinized" and "verbally attacked" the plaintiff was held insufficient to constitute protected activity because the communications made no reference to the plaintiff's race or membership in a protected class.  *Id.*

An employee cannot establish a causal connection between the protected opposition and the adverse employment action unless she can show her superior knew she engaged in such protected opposition. *Baltazar v. Shinseki*, 2012 WL 2369332, at *3 (10th Cir. June 25, 2012) (unpublished opinion) (citing *Petersen*, 301 F.3d at 1188–89). "An employer's action against an employee cannot be because of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition." *Petersen*, 301 F.3d at 1188-89.

In this case, Plaintiff alleges that, in 2010, she filed three charges of discrimination with the

14

EEOC. Amended Complaint at ¶¶ 34-37.   The first was filed on July 14, 2010, and she expressly alleges the University was aware of this charge when she was denied a full professorship on November 9, 2010.  *Id.* at ¶ 33, 35.  She also alleges the University was aware of this when it rescinded the vote electing her to Committee A on September 2, 2010.  Although Plaintiff does not expressly allege the University was aware of the first EEOC charge when she was not selected as Graduate Liaison, the date of that decision is alleged to have been September 15, 2010.  Amended Complaint at ¶ 29.   Because these EEOC charges allege race, gender, and national origin discrimination in violation of Title VII, her conduct in filing those charges satisfies the requirement of engaging in protected activity as to the second cause of action's contention that the University retaliated against her after her first EEOC charge was filed on July 14, 2010.  In the fifth cause of action, she alleges additional retaliation occurred after she filed new EEOC charges in 2011 and after this lawsuit was filed.   The filing of this lawsuit and the additional  2011 EEOC formal complaints are also sufficient to constitute activity protected by Title VII, thus satisfying the initial essential pleading component of the fifth cause of action.

Although the University is correct that the allegations in support of the fifth cause of action are somewhat conclusory, the Court finds that the Amended Complaint contains sufficient factual contentions to place the University on notice of the basis for Plaintiff's claim of unlawful retaliation after she filed this lawsuit.   Her factual allegation that she received an unwarranted poor performance review during this time period is sufficient to withstand dismissal, and the motion to dismiss is thus denied as to the fifth cause of action.

Plaintiff's  second cause of action, however,  relies on allegedly retaliatory actions which occurred both before and after she submitted the first EEOC charge of discrimination on July 14,

2010.  Specifically, she contends that her removal as  Director of Interior Design, which occurred on June 24, 2010, was a retaliatory action.  She contends that she had exercised protected Title VII rights before June 24, 2010 because she submitted a complaint to the University's EEO officer and Provost about the "gender discrimination she experienced" and about Professor Williams's "assaultive behavior."  Amended Complaint at ¶ 19.  Although the EEO internal complaint could constitute an exercise of Title VII rights pursuant to *Medina,*  413 F. 3d at 1135-36, Plaintiff's allegations are insufficient to demonstrate a claim on this basis because she does not identify the date on which she submitted the internal EEO complaint, and fails to plead facts identifying the Title VII rights asserted in that complaint.  She contends the complaint informed the EEO officer of the Professor Williams's alleged assaultive behavior, but does not allege his behavior was based on her gender, race, or national origin.  On the contrary, she alleges Professor Williams was Professor Wachter's "lifestyle partner," and suggests that Williams's improper conduct was in retaliation for Plaintiff's refusal to support Wachter's tenure bid.

That the EEO complaint alleged Professor Williams had engaged in "assaultive behavior" does not provide a basis for a Title VII retaliation claim because Title VII's anti-retaliation prohibition protects only "opposition to a practice made an unlawful employment practice by Title VII." *Petersen,* 301 F.3d at 1188.  Plaintiff alleges no facts to show that her EEO complaint asserted Professor Williams's  conduct had anything to do with her membership in a protected class. Although Plaintiff also alleges in paragraph 19 of the Amended Complaint that the EEO complaint addressed the "gender discrimination she experienced," she alleges no facts to explain the actions she identified to the EEO officer as constituting gender discrimination.  Nor does she submit a copy of the EEO complaint.

Plaintiff's allegations in the second cause of action are insufficient to state a plausible claim for relief based on unlawful retaliation during the time period preceding her initial EEOC charge on July 14, 2010. Her allegations are insufficient to state a plausible claim based on the assertion of a protected right prior to that date.

Even if Plaintiff had clearly pled facts to show she asserted Title VII rights during this time period, she must also plead facts that could support the second essential element of her retaliation – that the University took an action which a reasonable employee would have regarded as materially adverse. An adverse action does not include circumstances involving "'a mere inconvenience or an alteration of job responsibilities.'" *Wells v. Colorado Dept. of Transportation*, 325 F. 3d 1205, 1213 (10th Cir. 2003) (quoting *Heno v. Sprint/United Mgmt. Co.*, 208 F. 3d 847, 857 (10th Cir. 2000)). Examples of materially adverse actions recognized by the Tenth Circuit as sufficient for this element include "firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (citing *Acquilino v. Univ. of Kansas*, 268 F.3d 930, 934 (10th Cir. 2001).

However, materially adverse actions are not limited to "ultimate employment decisions," as the law is designed to cover conduct which could dissuade "a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 67-68. However, the requisite adversity must be material: "We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth 'a general civility code for the American workplace.'" *Id.* at 68 (quoting *Oncale*, 523 U.S. at 80) (emphasis in original). Thus, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work

and that all employees experience." *Id.*

In this case, Plaintiff's allegations in the second cause of action contain a litany of actions or occurrences which she believes were materially adverse.  However, her factual allegations  fail to explain the significance of some of these occurrences,[5] and other allegations fail to identify when these events occurred.   The Court concludes that the motion to dismiss must be granted as to the second cause of action to the extent it is based on such occurrences.

In contrast, Plaintiff's fifth cause of action Plaintiff alleges that she received an unwarranted poor performance evaluation after she filed this lawsuit and after she filed additional EEOC formal complaints.   The Court finds that reasonable professors in her position would find a poor performance evaluation to be a materially adverse action, and the dates of the EEOC charges and this lawsuit show that the evaluation was completed after she exercised Title VII rights. Whether she can show the requisite causal connection to support her claim is an evidentiary issue and cannot be determined at this time. Thus, the fifth cause of action contains sufficient facts to withstand the motion to dismiss.

In accordance with the foregoing, the motion to dismiss the second cause of action is granted in part and denied in part.  It is granted as to Plaintiff's claim of unlawful retaliation prior to the July 14, 2010 filing of her first EEOC charge of discrimination, and denied as to alleged retaliation occurring after that date.  The motion to dismiss the fifth cause of action is denied.

### 3. Equal Pay Act - Third Cause of Action:

The University seeks dismissal of a portion of the Plaintiff's Equal Pay Act claim, set out in the third cause of action in the Amended Complaint, arguing that the statute of limitations has

---

[5]For example, Plaintiff contends her failure to be selected for Committee A membership was materially adverse, but the Amended Complaint contains no facts explaining Committee A or why it was important.

expired on part of the allegations on which this cause of action is based.  As to the claims within the limitations period, the University argues Plaintiff has failed to allege facts sufficient to state a plausible claim for relief under the Equal Pay Act.

Although Plaintiff argues the statute of limitations is an issue that should be addressed in a summary judgment motion rather than a motion to dismiss, the Tenth Circuit has held that consideration in a Rule 12(b)(6) is proper.  "Although the statute of limitations is an affirmative defense, it may be resolved on a  Rule 12(b)(6) motion to dismiss where the 'dates given in the complaint make clear that the right sued upon has been extinguished.'" *Solomon v. HSBC Mortgage Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010) (unpublished opinion) (quoting *Aldrich v. McCulloch Properties, Inc.*, 627 F. 2d 1036, 1041 n. 4 (10th Cir. 1980)).  Therefore, if Plaintiff's allegations reflect that some claims are barred by limitations, dismissal is warranted.

The statute of limitations for a non-willful Equal Pay Act claim is two years.[6]  29 U. S. C. § 255.  Because Plaintiff's original Complaint was filed on March 25, 2011, the limitations period for her Equal Pay Act claims is necessarily limited to the two years preceding that date or, in this case, violations allegedly occurring from March 26, 2009 through March 25, 2011.  However, Plaintiff alleges violations during the time period in which she held the position of Director of Interior Design, from January 2005 through June 24, 2010.  Amended Complaint, ¶¶ 54-60.  Plaintiff affirmatively alleges that she did not hold that position after June 24, 2010.  Therefore, she can state a claim for relief based on Equal Pay Act violations only within the time period of March 26, 2009 through June 24, 2010.  To the extent she seeks recovery for violations allegedly occurring prior to March 26, 2009, her claim is time-barred.

---

[6]As the University points out, Plaintiff does not allege a willful violation.

19

The University argues that, with respect to the Equal Pay Act claim based on occurrences within the limitations period, Plaintiff's allegations are insufficient to state a plausible claim for relief because they constitute only a formulaic recitation of the elements of the claim.

A *prima facie* claim under the Equal Pay Act requires that the plaintiff establish: 1) she was performing work which was substantially equal to that of the employees of the opposite sex, taking into consideration the skills, duties, supervision, effort and responsibilities of the jobs; 2) the conditions where the work was performed were basically the same; and 3) employees of the opposite sex were paid more under these circumstances. *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006). To withstand a motion to dismiss, a plaintiff must plead facts sufficient to support these elements of proof.

Plaintiff alleges that, while she was the Director of Interior Design, she performed substantially the same duties as male directors of other departments within the College of Architecture. Amended Complaint at ¶ 57. She also alleges that her position required skill and effort equal to that of her male counterparts, that she and the male directors performed their work under similar conditions, that she was paid a salary less than the male directors, and the salary discrepancy was not the result of differences in seniority or merit. *Id.* at ¶¶58-60.

The University is correct that Plaintiff's allegations in the third cause of action are conclusory in that they recite the essential elements of an Equal Pay Act claim. However, her assertion that male directors within the College of Architecture were paid higher salaries than Plaintiff received as a director is also a factual contention which is sufficient to state a plausible claim for relief within the time period not barred by limitations. While specific facts identifying the male directors and comparing the salaries received would be preferable, the Tenth Circuit has held

that *Twombly* does not require that a complaint "'include all facts necessary to carry the plaintiff's burden.'" *Khalik v. United Air Lines,* 671 F.3d 1188, 1192 (10th Cir. 2012) (quoting *al-Kidd v. Ashcroft* 580 F.3d 949, 977 (9th Cir. 2009)).   A claim "'has facial plausibility when the [pleaded] content...allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"   *Kenney v. AG Equipment Co.*, 462 F. App'x 841, 843 (10th Cir. 2012) (unpublished opinion) (quoting *Jordan-Arapahoe, LLP v. Board of County Comm'rs,* 633 F.3d 1022, 1025 (10th Cir. 2011)).

With respect to the allegations in the third cause of action which are not barred by limitations, the Court finds there are sufficient factual allegations to withstand the motion to dismiss. Whether Plaintiff can prove the asserted allegations is not before the Court at this time. Accordingly, the motion to dismiss the third cause of action is granted only to the extent it asserts a claim barred by the statute of limitations.  The motion is denied with respect to the claim based on the time period from March 26, 2009 through June 24, 2010.

## IV. Leave to amend:

Having determined that the Amended Complaint must be dismissed in part, the Court must consider whether leave to amend should be granted. Pursuant to Fed. R. Civ. P. 15, leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, such leave is not automatic and may be precluded by various factors, including  futility and undue delay. *Foman v. Davis*, 371 U.S. 178, 182 (1962).   Where the court dismisses a cause of action for failure to state a claim, it may exercise its discretion to allow an amended complaint to cure the deficiency in the original complaint; however, it is not required to do so if the circumstances and the governing law render an amendment futile. *Bauchman v. West High School*, 132 F.3d 542, 559 (10th Cir. 1997) (citing *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir.1996)).    Where, as here, Plaintiff does not

21

expressly seek leave to amend in the event of dismissal, the Court is not required to consider the propriety of an amendment, and has the authority to dismiss the claims with or without leave to amend. *Brever v. Rockwell International Corp.*, 40 F. 3d 1119, 1131 (10th Cir. 1994).   However, "'if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.'" *Id.* (quoting 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1483, at 587 (2d ed. 1990) and *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993)).

With respect to the allegations in the first cause of action asserting Title VII discrimination based on race, gender and national origin, the Court has concluded the allegations are sufficient to withstand dismissal as to claims based on alleged racial discrimination, but there are insufficient factual contentions to support such a claim based on Plaintiff's gender or national origin.   If Plaintiff has a good faith basis for pursuing these latter allegations, she may amend to assert factual bases for her contention that discrimination was also based on her gender or her national origin.

With respect to the second cause of action asserting unlawful retaliation for the exercise of Title VII rights, the Court has granted the motion to dismiss for the time period preceding Plaintiff's July 14, 2010 EEOC charge.   Although Plaintiff alleges she asserted Title VII rights prior to that date, she has failed to coherently plead facts that could, if proven, show the date on which a Title VII protected right was exercised as well as facts to show how subsequent occurrences were materially adverse to her.   However, the Amended Complaint as a whole suggests she may be able to cure these deficiencies.   Accordingly, Plaintiff is authorized to amend the second cause of action for this purpose.

With regard to the third cause of action assertions of Equal Pay Act violations, the Court has granted the motion to the extent that the Amended Complaint alleges violations which are barred

by the expiration of the statute of limitations.  Plaintiff is granted leave to amend this cause of action to confine her allegations to those within the limitations period.

The Court has granted the motion to dismiss the fourth cause of action asserting a GTCA claim against the University.  For the reasons set forth herein, that claim is barred by sovereign immunity.  Accordingly, it would be futile to attempt to amend this cause of action, and leave to amend is denied.

With respect to the fifth cause of action, the Court has denied the motion to dismiss.  Thus, leave to amend is not an issue with respect to that cause of action.

V.  Conclusion:

For the foregoing reasons, the University's motion [Doc. No. 19] is granted in part and denied in part.  Plaintiff is authorized to file a Second Amended Complaint to cure the pleading deficiencies noted in this Order as to claims set forth in the first, second, and third causes of action. Leave to amend is denied as to the fourth cause of action, and the motion to dismiss the fifth cause of action is denied.  The Second Amended Complaint shall be filed within 14 days of the date of this Order.  The University's response shall be filed according to the deadlines set forth in the Federal Rules of Civil Procedure and the Local Civil Rules of this Court.

IT IS SO ORDERED this 24th day of August, 2012.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE